**Valerie CUNNINGHAM, et al., Plaintiffs,**

v.

**MUNICIPALITY OF METROPOLITAN SEATTLE; Gary A. Zimmerman; Secretary of State Ralph Munro; and Attorney General Ken Eikenberry, Defendants.**

**No. C89–1587WD.**

United States District Court, W.D. Washington, at Seattle.

Nov. 28, 1990.

Thomas W. Burt, Daniel S. Gottlieb, Hugh R. Tobin, Walter Walkinshaw, Riddell, Williams, Bullitt & Walkinshaw, Seattle, Wash., for plaintiffs Valerie Cunningham, Imogene Pugh, Elizabeth Springer and Monica Zucker.

Robert L. Gunter, Preston, Thorgrimson, Shidler, Gates & Ellis, Seattle, Wash., for defendants Tom Hill, Paul Barden, Gary Grant, Audrey Gruger, Bruce Laing, Greg Nickels, Lois North, Bill Reams, Ron Sims, Cynthia Sullivan, Robert L. Neir, Fred Jarrett, Doreen Marchione, Earl Clymer, Charles Royer, George Benson, Virginia Galle, Paul Kraabel, Jane Noland, Norm Rice, Dolores Sibonga, Sam Smith, Jim Street, Jeanette Williams, Bob Boscole, Irvin Potter, A.J. Culver, James Desalvo, Bill Domarotsky, Connie King, Lonnie McLean and Richard Ramsey.

Robert L. Gunter, Stephen A. Smith, Preston, Thorgrimson, Shidler, Gates & Ellis, Seattle, Wash., for defendants City of Seattle, Mun. of Metropolitan Seattle, Steve Stevlingson and Beverly Tweddle,

each in his/her capacity as a member of the Metro Council.

James Kendrick Pharris, Atty. Gen. Office Administration, Olympia, Wash., for defendants Ralph Munro, Secretary of State and Ken Eikenberry, Atty. Gen.

Norman K. Maleng, Seattle, Wash., for amicus curiae King County.

## ORDER DIRECTING ENTRY OF DE-CLARATORY JUDGMENT AND SET-TING SCHEDULE FOR INJUNC-TIVE RELIEF

DWYER, District Judge.

The order on cross-motions for summary judgment entered on September 6, 1990, directed plaintiffs to add the secretary of state and attorney general of Washington as parties defendant by filing and serving an amended complaint. That has been done, and the state defendants have elected to rely upon the *amicus curiae* brief filed earlier by the attorney general. This case is now ready for the entry of a declaratory judgment. As to that relief, the court finds that there is no just reason for delay and, under the provisions of Fed.R.Civ.P. 54(b), directs the clerk to enter, for plaintiffs and against all defendants, a final judgment declaring that the method of selecting the governing council of a metropolitan municipal corporation prescribed by RCW 35.58.112 is unconstitutional, as applied to Metro, in that it violates the one person, one vote principle of the equal protection clause of the Fourteenth Amendment.

As to injunctive relief, all parties have filed supplemental briefs and have presented argument at a hearing held on November 19, 1990.

The Supreme Court has made clear that "redistricting and reapportioning legislative bodies is a legislative task which the federal courts should make every effort not to pre-empt." *Wise v. Lipscomb*, 437 U.S. 535, 539, 98 S.Ct. 2493, 2497, 57 L.Ed.2d 411 (1978). Accordingly, the September 6 order provided that the state and Metro should be given a reasonable time and opportunity to arrive at a legislative solution. The parties agree with this in principle, but differ over what would be reasonable.

Metro itself cannot cure the constitutional defect. An act of the state legislature will be required. The legislature meets each year beginning on the second Monday in January; the regular session cannot exceed 105 consecutive days in odd-numbered years, or 60 consecutive days in even-numbered years. RCW 44.04.010; Wash.Const. art. 2, § 12(1). Thus, the next regular session will begin on January 14 and end on or about April 29, 1991. The legislators will be required to adopt the biennial state budget. *See* RCW 43.88.060. The 1992 regular session will begin on January 13, and end on or about March 6, 1992.

Plaintiffs seek an order requiring defendants to present a constitutional restructuring plan by April 30, 1991—that is, to submit a plan adopted at the legislative session scheduled to begin about seven weeks from now. They ask that the court order injunctive relief if defendants fail to submit a remedy by that time. Metro proposes that defendants be ordered to adopt a restructuring plan but that they not be subjected to a deadline. Newly-appearing *amici curiae*—King County, the City of Seattle, and the City of Bellevue—propose that time be allowed beyond the coming legislative session. They ask in particular that the "regional governance summit process" now under way be given time to work. That process is described as follows by the King County Prosecuting Attorney as *amicus curiae:*

> [D]iscussions among various members of the County Council last summer led to the introduction of a proposed ordinance, which would have put to the voters of King County the question of whether the County should assume the rights, powers, functions and obligations of the Municipality of Metropolitan Seattle ("Metro") pursuant to the provisions of RCW Chapter 36.56. After further discussions related to the proposed ordinance, the County Councilmembers on August 20, 1990 invited a large group of elected officials representing King County, the

City of Seattle, and all of the other suburban cities in King County to participate in a forum on regional governance now known as Regional Governance Summit Process.

At the time the summit process was initiated, this court had not yet ruled on the parties' cross-motions for summary judgment. Recognizing the strong possibility that the court would find the present Metro Council structure unconstitutional, the County considered it necessary for local government at every level in King County to seriously consider alternative ways of providing to the public the mass transit and water pollution control services presently provided by Metro, preferably as part of a comprehensive scheme of regional government. Accordingly, the summit process was designed in large part to establish a forum for the discussion of this critically important issue.

The first summit meeting was convened on September 5, 1990. Participants at that meeting included 21 elected officials from King County as well as the various cities in King County. The participants agreed that the issue of regional governance in King County had to be addressed, that changes in existing governmental structures might well have to be made, and that particular attention needed to be given to the question of which levels of government should most appropriately be responsible for providing the many different kinds of important governmental services to the public in King County.

In an attempt to foster the summit process, and to make it more likely that a consensus on regional governance would ultimately be reached, the County agreed to defer placing the Metro merger question before the voters of King County. Instead, the County committed itself to working toward a consensus with the cities on how a representative, county-wide system of government might best be structured.

At their meeting on September 5, the summit participants agreed to engage in an ongoing dialogue. Three summit meetings have been held to date, and eight additional meetings are scheduled to occur between now and April 1991. They also established a tentative timetable for reaching a consensus on regional governance and for concluding their work.... [T]he summit participants agreed to reach such a consensus by April of 1991. They further agreed that a two month period of public comment would follow their consensus on regional governance, and that if it were then necessary to place before the voters of King County a ballot proposition on the issue of regional governance and the provision of regional governmental services. Such question would be put to a vote not later than the general election in the fall of 1991.

*Amicus curiae* brief of King County, Dkt. # 114, pp. 2–4.

The foregoing description of the regional governance summit process is supported by affidavits of participants and minutes of the meetings held to date. It is clear that a major effort to address the problems of county-wide government, including the functions performed by Metro, is in progress. If a consensus is reached, any necessary action by the state legislature could not reasonably be sought before the 1992 regular session.

This is not a situation, as was *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), in which a court is dealing simply with a state legislature's failure to adopt a constitutional districting plan for the election of the legislature itself. Metro is a complex structure, the result of careful negotiations among many municipal entities. A change in its structure should be brought about in consultation with local governments and civic groups, and with a full opportunity for public comment. It would be possible to require that the legislature amend the structure of Metro at its session to begin seven weeks from now, but the result

would be a hasty and probably inadequate solution that in all likelihood would have to be redone later.

To order the defendants to proceed without a deadline, however, would not be desirable for the parties or the public. What constitutes a "reasonable opportunity" for compliance must depend on the facts of the case. The Second Circuit in *Morris v. Board of Estimate*, 831 F.2d 384, 393 (2nd Cir.1987), *aff'd*, 489 U.S. 688, 109 S.Ct. 1433, 103 L.Ed.2d 717 (1989), allowed the constitutionally-flawed board to continue to function and imposed a one-year deadline for submission of a restructuring plan; but in the event, the process took more than two years. In the present case the parties and the public should have a chance to complete the regional governance summit process, to hold any necessary election on the results in the fall of 1991, and to obtain needed legislative action at the 1992 legislative session. A period of sixteen months to take these steps is reasonable. A shorter schedule would damage what should be a careful process; a longer one might delay unduly the correction of a constitutional flaw.

It is therefore ordered that the defendants have until April 3, 1992, to file with the court a fully adopted measure revising the method of selecting the Metro Council so as to bring it into compliance with the one person, one vote principle. If that deadline is not met, a further hearing on injunctive relief will be held. The Metro Council may continue to function in the meantime.